**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **1:21-cr-73-HSO-RHWR-1** |
| | § | **1:24-cv-27-HSO** |
| | § | |
| **NICHOLAS PAUL GODSEY** | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
NICHOLAS PAUL GODSEY'S MOTION [70] TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY
PURSUANT TO 28 U.S.C. § 2255**

BEFORE THE COURT is the Motion [70] of Defendant Nicholas Paul Godsey to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. After due consideration of the Motion [70], the record, and relevant legal authority, the Court is of the opinion that the Motion [70] and the files and records of this case conclusively show that Nicholas Paul Godsey is entitled to no relief and that his § 2255 Motion should be denied without an evidentiary hearing. *See* 28 U.S.C. § 2255(b).

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Procedural Background

On July 9, 2021, a Criminal Complaint [1] was lodged against Defendant Nicholas Paul Godsey ("Defendant" or "Godsey"), charging him with violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, arising out of a July 8, 2021, traffic stop. *See* Compl. [1] at 1; Aff. [1] at 2. The Magistrate Judge conducted an initial appearance on July 9, 2021, with Godsey and an Assistant

Federal Public Defender ("AFPD") present with him.   *See* Min. Entry [4].   After attorney Jarrett Tyler Cox ("Cox") entered an appearance on Godsey's behalf, *see* Notice [9], the AFPD moved to withdraw as counsel, *see* Mot. [10].   Godsey waived preliminary and detention hearings and was bound over to the next Grand Jury. *See* Min. Entry [11].

On July 28, 2021, the Grand Jury returned a four-count Indictment against Godsey.   *See* Indictment [17].   Count 1 charged him with conspiring to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, *id.* at 1, while Count 2 charged that Godsey, aided and abetted by others, possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2, *id.* at 1-2.   Count 3 charged Godsey with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), *id.* at 2, and Count 4 charged him with possessing a falsely made, forged and counterfeited obligation of the United States, that is, a Federal Reserve Note in the denomination of one hundred dollars, in violation of 18 U.S.C. § 472, *id.* Godsey and his attorney, Cox, executed a Waiver of Appearance at Arraignment and Entry of Not Guilty Plea on August 4, 2021, *see* Waiver [21], and the Magistrate Judge set Godsey's jury trial in September 2021, *see* Order [22].

On August 13, 2021, Cox filed an unopposed Motion [26] to Continue due to "voluminous" discovery, Mot. [26] at 1, which the Court granted; it continued the trial to November 1, 2021, Text Order, Aug. 13, 2021.   On October 12, 2021, Cox filed another Motion [31] to Continue, stating that a proposed plea agreement was sent to him on October 8, but he had been unable to discuss it with Defendant.   *See*

Mot. [31] at 1.    The Court granted the Motion [31] and continued the trial to the December 2021 trial calendar.    *See* Text Order, Oct. 12, 2021.    On December 2, 2021, Cox filed a third Motion [33] to Continue, stating that "discovery in this matter is voluminous and counsel is still in negotiations with the government . . . ." Mot. [33] at 1.    The Court granted that Motion [33] and moved the trial to the March 2022, trial calendar, but stated that "**THERE WILL BE NO FURTHER CONTINUANCES ABSENT EXTRAORDINARY CIRCUMSTANCES**."    Text Order, Dec. 2, 2021 (emphasis in original).

On January 6, 2022, Cox and Calvin Taylor, another attorney who had filed a motion on Godsey's behalf in the case, moved to withdraw as counsel.    *See* Mot. [34]; Mot. [35].    At a hearing on the Motions [34], [35], both attorneys stated that new counsel, Joshua D. Taylor ("Taylor"), would be entering an appearance on Godsey's behalf, *see* Min. Entry, Jan. 11, 2022, which he did the next day, *see* Notice [36].    Cox and Calvin Taylor were then permitted to withdraw.    *See* Text Order, Jan. 13, 2022.

B.    Godsey's Guilty Plea

On February 14, 2022, Taylor filed on Godsey's behalf a Notice [38] of Intent to plead guilty.    *See* Notice [38].    The Court conducted a change-of-plea hearing on December 16, 2022, at which Godsey was present.    *See* Min. Entry, Dec. 16, 2022. The Court announced at the beginning of the hearing that it had been informed that Godsey's was a change of plea to guilty to Count 1 of the Indictment, to which the Assistant United States Attorney and Taylor both responded "[y]es."    Tr. [66] at 2.

The Court confirmed with Godsey whether he understood that his appearance was to change his plea to guilty to Count 1 and, under oath, Godsey responded, "[y]es, sir." *Id.* at 6. When asked whether he had seen the Indictment, reviewed and discussed it with his attorney, asked his attorney any questions he had about the charges, and understood the charges in the Indictment, Godsey responded, "[y]es, sir" to all questions. *Id.* at 6-7.

Godsey further agreed that he had had an opportunity to read and discuss the Plea Agreement, Plea Supplement, and Agreed Preliminary Order of Forfeiture with his attorney prior to signing them. *Id.* at 9-10. The Plea Agreement, which Godsey signed and stated under oath he understood, reflected that he desired to plead guilty to Count 1 of the Indictment and that he understood the penalty associated with that charge was not more than 20 years of imprisonment, at least three years supervised release, a fine of up to $1,000,000.00, and a $100.00 special assessment. *See* Plea Agreement [40] at 1.

The Assistant United States Attorney ("AUSA") then recited into the record some of the key terms of the Government's agreement with Godsey, including that,

> [i]f the defendant pleads guilty to Count 1 of the indictment charging the crime of conspiracy to possess with intent to distribute a controlled substance, methamphetamine, in violation of Title 21, United States Code, Section 846, the government will recommend that the Court accept the defendant's plea.

> At sentencing, the government will recommend that the defendant be sentenced in accordance with the plea agreement and the plea supplement, to be filed under seal.

Tr. [66] at 10. Godsey testified under oath that he heard everything the AUSA had stated, that he understood it, and that he agreed to it. *Id.* at 12-13. Based upon

4

Godsey's statements, the Court accepted the Plea Agreement and Plea Supplement.

*Id.* at 18.

The Court then advised Godsey of the maximum and mandatory minimum

penalties to which he would be exposed by pleading guilty to Count 1.  *Id.*  Later,

the Court stated that,

> I'm required to inform you of the charge to which you are seeking to
> plead guilty. In this case, you are seeking to plead guilty to Count 1 of
> the indictment, which charges as follows: Beginning at least in or about
> June of 2021 and continuing up to on or about July 8, 2021, in Harrison
> County in the Southern Division of the Southern District of Mississippi
> and elsewhere, the defendant, Nicholas Paul Godsey . . . and others
> known and unknown to the grand jury, did knowingly and intentionally
> conspire with others known and unknown to the grand jury to possess
> with intent to distribute a mixture or substance containing a detectable
> amount of methamphetamine, a Schedule II controlled substance, in
> violation of Title 21, United States Code, Section 841(a)(1), all in
> violation of Title 21, United States Code, Section 846.

*Id.* at 25.

The Court again inquired if Godsey had seen the Indictment and had a "full

opportunity to discuss this charge with [his] attorney and ask him any and all

questions [he] had about it," to which Godsey responded "[y]es, sir."  *Id.* at 25-26.

Godsey also testified that he understood his attorney's answers to his questions and

that he understood the charge against him in Count 1.  *Id.* at 26.

The Court then reviewed the essential elements of the charge in Count 1.

Godsey averred that he understood those essential elements, that he had discussed

them with his attorney and asked any questions he had, and that he understood his

attorney's answers.  *Id.* at 29.   When the Court asked whether Godsey fully and

completely understood the nature of the charge in Count 1, including its essential

elements, he responded, "[y]es, sir." *Id.* at 29-30.

The Court then asked the AUSA to state those facts the Government would

be prepared to prove if the case went to trial. *Id.* at 30. The AUSA stated, in

relevant part, that

> [o]n or about July 8, 2021, and based on law enforcement intelligence
> and prior investigation beginning at least in or about June 2021,
> regarding illegal narcotics trafficking activity, a Federal Drug
> Enforcement Administration DEA Special Agent and DEA Task Force
> Officers were conducting mobile surveillance of Nicholas Paul Godsey,
> the defendant in this case.

*Id.* at 30. Godsey's traveling and stops appeared to agents to be connected to drug

trafficking activity. *Id.* at 31. According to the Government,

> DEA agents conducted a stop in Biloxi of the vehicle that was driven and
> then solely occupied by Nicholas Paul Godsey.
>
> While speaking with DEA officials, Godsey spontaneously stated that
> the only thing he had was a meth pipe in his vehicle. Biloxi law
> enforcement officials and a Biloxi Police Department narcotics K-9
> assisted the DEA during the on-site investigation. The specially
> trained narcotics K-9 alerted to the presence or odor of narcotics inside
> the vehicle. A probable cause search of the vehicle yielded a
> methamphetamine pipe, two individual bags with a total of
> approximately 1.2 grams of a substance containing suspected
> methamphetamine, which Godsey admitted contained meth. The
> recovered specimen was field tested positive for methamphetamine and
> sent to the DEA lab. Also recovered from Godsey's vehicle was a Glock
> Model 17, 9-millimeter pistol, Serial Number NLE842, three
> ammunition magazines, 39 rounds of ammunition, a digital scale, a
> meth pipe with meth residue, four counterfeit 100-dollar notes, blank
> checks, and a cell phone identified as a black iPhone 11 Pro Max Model
> MWF92LL/A, Serial Number FCJD87K0N70L.
>
> Godsey gave consent for law enforcement officials to search his cell
> phone which contained videos of him working with a woman teaching
> him how to make counterfeit currency. Also, Godsey's phone contained
> multiple videos and text messages regarding Godsey with firearms and

working drug deals with others, including his supplier of
methamphetamine.

\* \* \*

Law enforcement investigators determined that the Defendant Nicholas
Paul Godsey, beginning at least in or about June 2021 and continuing
up to on or about July 8, 2021, in Harrison County and elsewhere,
knowingly and intentionally conspired with others to possess with
intent to distribute a mixture or substance containing a detectable
amount of methamphetamine, a Schedule II controlled substance, in
violation of Title 21, United States Code, Section 841(a)(1), all in
violation of Title 21, United States Code, Section 846.

*Id.* at 31-33.

When asked by the Court to elaborate on the agreement to engage in

unlawful activity, the AUSA stated that

there were considerable, in addition to the observed activity of the
defendant by the DEA agents, there were considerable videos and text
messages in the cell phone involving Mr. Godsey that were clearly
evidence of conspiring to traffic methamphetamine with suppliers of
methamphetamine, Mr. Godsey reviewing methamphetamine and
firearms together, a video including a supplier in Mexico. There were
numerous text messages. So there is a considerable amount of
evidence in the phone.

*Id.* at 33. Godsey acknowledged under oath that he had heard everything the

AUSA had said, that he understood it, and that he agreed with those facts. *Id.* at

33-34. Godsey confirmed that this was what had happened in the case, and he

then pled guilty to Count 1 of the Indictment. *Id.* at 34. The Court accepted

Godsey's guilty plea and adjudged him guilty of the crime charged in Count 1. *Id.*

at 35.

C.    Godsey's Sentencing

In preparation for sentencing, the United States Probation Office prepared a

Presentence Investigation Report ("PSR") [51], which clearly reflected that the

offense of conviction was Count 1,

> Conspiracy to Possess with Intent to Distribute a Mixture or Substance
> Containing a Detectable Amount of Methamphetamine
> 21 U.S.C. § 846
> Not more than 20 years imprisonment/$1,000,000 fine
> (Class C Felony)[.]

PSR [51] at 1 (filed under seal).    The PSR [51] explained that Godsey had pled

guilty to Count 1, *id.* at 4, which charged that,

> beginning at least in or about June 2021 and continuing up to on or
> about July 8, 2021, in Harrison County, in the Southern Division of the
> Southern District of Mississippi, and elsewhere, the defendant and
> others known and unknown to the grand jury, did knowingly and
> intentionally, conspire with others known and unknown to the grand
> jury, to possess with intent to distribute a mixture or substance
> containing a detectable amount of methamphetamine, a Schedule II
> controlled substance, in violation of Title 21, United States Code,
> Section 841(a)(1), and all in violation of Title 21, United States Code,
> Section 846[,]

*id.* at 3.

The PSR [51] calculated Godsey's total offense level as 35, *id.* at 13, and his

criminal history category as VI because he was a career offender, *id.* at 17, resulting

in a Sentencing Guidelines imprisonment range of 292 to 365 months, *id.* at 23.

However, because the statutorily authorized maximum term of imprisonment of 20

years fell below the minimum of the applicable Guidelines range, the Guidelines

term of imprisonment was capped at 240 months.    *Id.*    Godsey's counsel objected

to the estimated drug quantities used in the Guidelines calculations.    Addendum

[51-1] at 1 (filed under seal).    Specifically, he "did not object to the estimated

quantity of methamphetamine itself, only that the quantity should be considered a

mixture of methamphetamine, which would result in a lower base offense level."
*Id.*

Godsey testified under oath at the sentencing hearing that Taylor had reviewed the PSR and Addendum with him, and that he had been able to ask his attorney any questions he had about them.   Tr. [68] at 5-6.   Godsey further stated that he understood his counsel's answers to his questions as well as the PSR and the Addendum, *id.* at 6, and that he agreed that he only had the one objection, regarding drug purity, *id.* at 6-7.   Ultimately, the Court overruled this objection, *id.* at 12, and sentenced Godsey to a 210-month term of imprisonment as to Count 1, *id.* at 19, followed by a three-year term of supervised release, *id.* at 20.   The Court further stated that,

> [i]n the event the Court erred in calculating any of the sentencing guidelines in this case or in resolving any objections, the Court would've imposed the same sentence as a variance or non-guideline sentence based upon the offense conduct in this case, the characteristics of the defendant, and the other 3553 factors as the Court has discussed them here today.

*Id.* at 24.

Godsey filed a direct appeal, *see* Notice [52], and was appointed counsel to represent him, *see* Order [62].   When the Government moved to dismiss the appeal based upon the appeal waiver contained in the Plea Agreement, the Fifth Circuit granted the Government's Motion and dismissed the appeal on November 3, 2022. *See* Order [69].

D.    Godsey's § 2255 Motion

On February 1, 2024, Godsey timely filed the present Motion [70] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.    *See* Mot. [70].    Godsey claims that he received ineffective assistance from his trial counsel in advising and representing him in three respects: (1) prior to the entry of the guilty plea; (2) at entry of the guilty plea; and (3) prior to and during sentencing.    *See id.* at 4-7.

The Court entered an Order [71] requiring an affidavit from Godsey's former attorneys Cox and Taylor and an answer by the United States Attorney.    *See* Order [71].    Cox and Taylor have both filed Affidavits [72], [73], and the Government has filed a Response [76] in opposition to the Motion [70].    Godsey has filed a Reply [81].[1]

## II.    DISCUSSION

A.    Relevant Legal Standards

A prisoner may move to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255 on any one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack.    28 U.S.C. § 2255(a).    Upon a finding that any one of these four grounds for relief are present,

---

[1]  Godsey filed a supporting Memorandum [75] after the attorney Affidavits [72], [73] were filed, but it was apparent that not all pages were included.    *See* Mem. [75].    On April 10, 2024, Godsey filed a Notice [77] of Amendment with a complete copy of his Memorandum [78] to "correct a collation error in the pages of the prior filing being omitted."    Notice [77] at 1.

a court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). However, if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief," a court can deny the motion without a hearing. *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quotation omitted). "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *Id.*

"[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002). To demonstrate ineffective assistance of counsel, Godsey must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). "Failure to establish either prong defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997).

"For the deficiency prong, counsel's performance is to be accorded 'a heavy measure of deference.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). A court must assess reasonableness "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 11 F.4th 364, 368-69 (5th Cir. 2021) (quotation omitted). There is a "strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance";
a defendant can overcome the presumption by demonstrating that "counsel's
representation was unreasonable under prevailing professional norms and that the
challenged action was not sound strategy." *Id.* at 369 (quotations omitted).

To establish the second prong of an ineffective assistance claim, prejudice,
"*Strickland* asks whether it is 'reasonably likely' the result would have been
different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Strickland*, 466
U.S. at 696).

> This does not require a showing that counsel's actions "more likely than
> not altered the outcome," but the difference between *Strickland*'s
> prejudice standard and a more-probable-than-not standard is slight and
> matters "only in the rarest case."

*Id*. at 111-12 (quoting *Strickland*, 466 U.S. at 693, 697). "The likelihood of a
different result must be substantial, not just conceivable." *Id.* at 112. The
Supreme Court has defined a reasonable probability as a "probability sufficient to
undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting
*Strickland*, 466 U.S. at 694).

**B.** Ground One: Ineffective Assistance Prior to the Guilty Plea

**1.** Godsey's Allegations

Godsey asserts that "Cox convinced [him] to waive [his] detention hearing,"
and that he was indicted on four charges, which no one told him. Mot. [70] at 4.
Godsey was purportedly only aware of the § 922(g) firearm charge contained in the
original Criminal Complaint. *Id.* After Cox and Taylor withdrew as counsel,
Godsey alleges that he "neither saw any evidence nor met with J.D. Taylor in the

month following withdrawal of the other attorneys."   *Id.*

On February 14, 2022,[2] Taylor purportedly came to Godsey's detention facility for a "brief meeting . . . to tell [Godsey] that [he] had no choice but to plead guilty because the government had obtained video of [him] with drugs and guns from [his] cellphone."   *Id.*   Godsey claims that he "protested that the videos were not of [him]," but Taylor "said the government said otherwise."   *Id.*   Godsey contends that, had Taylor investigated the videos, he would have refused to plead guilty.   *Id.*; *see* Mem. [78] at 10-11.   Godsey claims that he only saw the videos at the change-of-plea hearing, and "[i]t is clear that the person in the videos with the methamphetamine and guns is not [him]," but was an individual who sent the video to Godsey through Facebook.   Mem. [78] at 11.

Taylor allegedly presented Godsey with the Plea Agreement and told Godsey that if he "did not sign it, [he] faced 292-365 months in prison, but if [he] did sign it, he could get [Godsey] 17 years."   Mot. [70] at 4.   Godsey insists that no attorney showed him the Indictment or any discovery, and during the change-of-plea hearing, he "still believed [he] was pleading to an 18 U.S.C. § 922(g)(1) count."   *Id.*; *see* Mem. [78] at 24-25.   Had he known he was agreeing to plead to the drug conspiracy, Godsey contends that he would have refused to do so.   Mot. [70] at 4.

Godsey claims that he "finally figured out what was going on" during the plea hearing "when the government started talking about a drug conspiracy."   Mem.

---

[2]  The Court notes that this date appears to be erroneous.   Godsey and Taylor both signed and dated the Plea Agreement [40] and Plea Supplement [41] as of February 9, 2022.   *See* Plea Agreement [40] at 7; Plea Supp. [41] at 5 (filed under seal).

[78] at 26.    But Taylor "whispered to [Godsey] that the drug conspiracy conviction didn't matter because [he] was 'careered out' anyway, so [his] sentence would not be affected," which advice Godsey argues was "dead wrong," because the maximum sentence would have only been 10 years for the firearms charge at that time.    *Id.* But Godsey states that he "did not know this at the time, and [he] was relying on [Taylor's] hurried advice in the middle of the hearing."    *Id.*    According to Godsey, Taylor "had little understanding what was going on in [his] federal prosecution" and "failed [Godsey] in advising [him] to enter into the plea agreement and to plead to a 21 U.S.C. § 846 drug conspiracy charge."    *Id.* at 27.

2.    <u>Analysis</u>

With respect to the claim that Cox purportedly convinced Godsey to waive his preliminary and detention hearings, *see* Mot. [70] at 4, Godsey states in his Reply [81] that he is bringing no ineffective assistance claim as to Cox, *see* Reply [81] at 1 (representing that "I have not alleged that Attorney Cox rendered ineffective assistance of counsel with respect to any matter," only that Taylor did).    Therefore, any claim on this issue is moot and should be dismissed.    *See id*.

But even if Godsey were bringing an ineffective assistance claim as to Cox, the record in this case conclusively shows that Godsey is entitled to no relief.    *See Reed*, 719 F.3d at 373.    The waivers of the preliminary and detention hearings were executed by Cox and by Godsey himself on July 22, 2021, *see* Waiver [12]; Waiver [13], which was before the Indictment [17] was returned on July 28, 2021, *see* Indictment [17].    Cox and Godsey signed a separate Waiver [21] of Appearance at Arraignment and Entry of Not Guilty Plea as to the Indictment [17] on August 4,

2021.  *See* Waiver [21].   In a third Waiver [21] after he was indicted, Godsey averred that he had "discussed the charges in the Indictment and the waiver of appearance at arraignment with my attorney" and that he "fully understand[s] the nature of the offenses charged and [his] right to appear at arraignment."  *Id.* at 1. Godsey further represented that, "[u]nderstanding his rights, . . . [he] freely and voluntarily waive[d] [his] right to be present at [his] arraignment on the Indictment and [his] right to have it read to me in open court."  *Id.*   And Godsey has not attempted to articulate how waiving any of these proceedings had any adverse effect upon his criminal case.   *See* Mot. [70]; Mem. [78].

Liberally construing his pro se Motion [70], Godsey's position appears to be that, had he gone to these hearings, he would have learned of the charges he faced in the Indictment [17].   But only one hearing was waived after Godsey was indicted, *see* Waiver [21], and the Waiver's [21] plain text clearly shows that Godsey understood that he was waiving his right to be present at his arraignment on the "Indictment" and that there were "offenses charged" in it, meaning more than one, *id.* at 1.   Simply put, nothing in the record suggests that any waiver actually had an adverse effect on the outcome of Godsey's case, and because Godsey cannot show that it is "reasonably likely" the result would have been different absent the waivers, he cannot show prejudice.   *Harrington*, 562 U.S. at 111.   Moreover, "[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant."   *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019).

With respect to Godsey's contention that his attorney never informed of him of the Indictment's existence or the charge to which he was pleading guilty, any

assertion that Godsey was unaware of the conspiracy charge prior to his entry of a guilty plea is plainly belied by the record.   Godsey contends that "[n]owhere in the *Plea Agreement* does the word 'conspiracy' appear, only the reference to 21 U.S.C. § 846, a reference which told me nothing."   Mem. [78] at 9 (emphasis in original).   While the Plea Agreement does refer to Count 1 of the Indictment and cite the statute, *see* Plea Agreement [40] at 1, the Plea Supplement executed by Godsey on the same date clearly states that one of his obligations included "tender[ing] a plea of guilty to Count 1 of the Indictment pending in this case, charging Defendant with *Conspiracy to Possess with Intent to Distribute a Controlled Substance – Methamphetamine, in violation of Title 21, United States Code, Section 846*," Plea Supp. [41] at 1 (filed under seal) (emphasis added).   The contemporaneous record of the plea hearing is also clear that Godsey was thoroughly advised of the specific charge to which he was pleading guilty, both before and during the change-of-plea hearing.   *See, e.g., id.*; Waiver [21]; Tr. [66] at 10, 18, 25-29.

Godsey's testimony under oath at the change-of-plea hearing reflects that he was aware of the charge in Count 1 and that he knowingly and voluntarily pled guilty to that charge.   *See* Tr. [66] at 10-13, 18-20, 25-29.   This Court thoroughly questioned Godsey at the hearing to ensure that he understood the charge and his Plea Agreement with the Government.   *See* Tr. [66].   Godsey also testified under oath that he had discussed the essential elements of the conspiracy charge in Count 1 with his attorney, asked him any questions he had about them, and that he understood his answers.   *Id.* at 29.   And courts "will not allow a defendant to contradict testimony given under oath at a plea hearing."   *United States v.*

16

*McClinton*, 782 F. App'x 312, 314 (5th Cir. 2019).   Godsey's statements under oath

contradict and negate his post-hoc assertions concerning his lack of knowledge of

the Indictment and his attorney's representation in that regard.   This ineffective

assistance claim should be dismissed without an evidentiary hearing.   *See id.* at

314-15.

B.   Ground Two: Ineffective Assistance Regarding Entry of Guilty Plea

1.   Godsey's Allegations

Godsey's § 2255 Motion [70] alleges that, on July 29, 2021, he "was taken

from jail to DEA offices," but not informed where he was going.   Mot. [70] at 5.

Taylor was present at the DEA office and told Godsey that he "was going to be

speaking to DEA agents about matters they wanted to explore," but he "was not

aware that an indictment had been handed up against [him] the day before" that

"charged [him] with a drug trafficking conspiracy."   *Id.*   Godsey states that he was

"not aware that [he] had the right not to discuss matters with [the DEA agents] and

not aware that what [he] told the agents could be used against [him] in the

prosecution or sentencing."   *Id.*

According to Godsey, had Taylor "informed [him] that [he] had been indicted

the day before and that the indictment included a drug trafficking offense," or that

the agents could use what Godsey told them against him, Godsey "would have

declined to speak to the agents."   *Id.*   But because he was not aware of the

Indictment, Godsey provided information that the Government used against him at

sentencing.   *Id.*; *see* Mem. [78] at 20-23.   According to Godsey, the information

that he "provided the DEA was used to assess three ounces of methamphetamine

against [him] at sentencing," Mem. [78] at 21, and had Taylor informed him that he had been indicted on a drug trafficking offense, Godsey "would have skipped the proffer session altogether," *id.* at 23.

2.   Analysis

Even if Godsey were correct that his attorney failed to inform him of the Indictment's return prior to his DEA interview, and that counsel's representation fell below an objective standard of reasonableness in that regard, he must still show that counsel's ineffectiveness was prejudicial.[3]   *See Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.   He has not done so.

Godsey claims that the information he "provided the DEA was used to assess three ounces of methamphetamine against [him] at sentencing."   Mem. [78] at 21.[4] Without these three ounces, Godsey would have been held responsible for a total of at least 48 ounces, or 1,360.78 grams, rather than the "at least 51 ounces of methamphetamine," which was utilized in determining his offense level.   PSR [51] at 10 (filed under seal).   The 1,360.78 grams of methamphetamine, at the conservative 90% purity level employed by the Court, equated to 1,224.702 grams, or 1.224702 kilograms, of methamphetamine (actual).   *See id.* at 10-11.   "As the

---

[3]   The Court is not persuaded that Godsey can show any deficient performance, particularly before he entered the guilty plea.   Godsey testified under oath at the hearing that he was satisfied with the amount of time he was able to spend with this attorney and the amount of time that his attorney spent working on his case, and that he was fully satisfied with counsel, representation, and advice given him by his attorney.   *See* Tr. [66] at 8-9.
[4]   The Government disputes that any new information obtained from Godsey at the proffer was used against him at sentencing, *see* Resp. [76] at 11, but even if it were, Godsey cannot show prejudice for the reasons stated herein.

defendant was accountable for at least 500 grams, but less than 1.5 kilograms, of methamphetamine (actual), the base offense level [would remain] 34." *Id.* at 11.

Thus, even accepting Godsey's claim as true and excluding three ounces of methamphetamine purportedly discovered during the DEA interview, the Guidelines determination would have remained the same. *See id.*: U.S.S.G. § 2D1.1(a)(5), (c)(3) (2021). Godsey cannot demonstrate prejudice under *Strickland*, which is fatal to his ineffective assistance of counsel claim in Ground Two. *See Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.[5]

**D.    Ground Three: Ineffective Assistance Prior to and During Sentencing**

**1.    Godsey's Allegations**

Ground Three asserts that the "[m]uch of the Government's evidence of [Godsey's] involvement in controlled substance trafficking turned on a single video found on [his] cellphone," which had been sent to Godsey by Dalton Thrash ("Dalton" or "Thrash"). Mot. [70] at 7. According to Godsey, he told "Taylor repeatedly that the person in the video was Dalton, not [him]," and that Taylor "should investigate it, but all he responded was that 'they seem to think it's you . . . .'" *Id.*; *see* Mem. [78] at 10-11, 27-28.

---

[5]    Moreover, Godsey received the benefit of pleading to only one Count of the Indictment, along with a three-level reduction in his offense level based upon his acceptance of responsibility. *See* PSR [51] at 12-13 (filed under seal). Godsey's Motion [70] does not address what effect his refusing to speak with DEA agents and/or not pleading guilty might have had on the acceptance reduction and 20-year statutory cap on incarceration as to Count 1. *But see id.*; *see also* Resp. [76] at 5 (representing that "it is fair to say that Godsey received a sentence of over 155 months less than what he may have received without a plea agreement"); Mot. [48] (filed restricted access).

Godsey contends that, because of the video, he was erroneously held responsible for an additional 40 ounces of methamphetamine.   Mem. [78] at 13. Godsey claims that his sister met with Taylor before sentencing, and Taylor refused to object to the use of the video to establish the quantity of methamphetamine because it "would piss the judge off" and had "no bearing and is not adding any additional time to [Godsey's] sentencing . . . ."   *Id.*; *see id.* at 28.

Godsey also complains that Taylor did not show him the PSR until the day before sentencing, and regarding the statements in the PSR that Godsey had gone to Mexico, trafficked in guns, and visited the Laredo, Texas, area often to pick up drugs, Godsey explained that he had no passport, the person in the video was not him, and he went to Laredo to visit his girlfriend, not traffic drugs.   Mot. [70] at 7. Godsey also cites statements in his mother's Declaration that she tracked his whereabouts with a GPS application, which purportedly showed that he never entered Mexico.   Mem. [78] at 12 (citing Ex. 14).   According to Godsey, he "did indeed travel to within 25 miles of the Mexican border on regular occasions, but not for the nefarious purposes that were inferred from the suppositions in the PSR," but instead because his minor child lives in Laredo.   *Id.*; *see id.* at 28-29.   Godsey contends that, had Taylor raised all of these objections, his total offense level would have been reduced, resulting in a lower Guidelines sentencing range.   *See id.* at 14-15, 29-30.

2.   <u>Analysis</u>

The thrust of Godsey's argument is that the videos concerning 40 ounces of methamphetamine, the firearm, and a Mexican source of drug supply were not of

20

him, meaning that 40 ounces of methamphetamine were wrongfully attributed to

him, and that the two-level importation enhancement under the Guidelines was

also erroneously applied.    *See* Mot. [70]; Mem. [78].    But at the change-of-plea

hearing, the Government stated in its factual basis that

> Godsey gave consent for law enforcement officials to search his cell
> phone which contained videos of *him* working with a woman teaching
> *him* how to make counterfeit currency.    Also, Godsey's phone contained
> multiple videos and text messages regarding *Godsey* with firearms and
> working drug deals with others, including his supplier of
> methamphetamine.
>
> *          *          *
>
> [I]n addition to the observed activity of the *defendant* by the DEA
> agents, there were considerable videos and text messages in the cell
> phone involving *Mr. Godsey* that were clearly evidence of conspiring to
> traffic methamphetamine with suppliers of methamphetamine, *Mr.
> Godsey* reviewing methamphetamine and firearms together, a video
> including a supplier in Mexico.

Tr. [66] at 32-33 (emphasis added).

Godsey confirmed under oath that he heard and understood everything the

attorney for the Government had stated, and that he agreed with those facts.    *Id.*

at 33-34.    Godsey then reaffirmed that was in fact what had happened in this case.

*Id.* at 34.    Godsey's allegations in Ground Three stand in stark contradiction to his

testimony given under oath concerning the videos on his phone, *see id.* at 32-34,

which is not permissible, *see McClinton*, 782 F. App'x at 314-15.    Nor do Godsey's

conclusory allegations, which contradict his prior testimony, justify an evidentiary

hearing.    *See Reed*, 719 F.3d at 373.    Moreover, the PSR contained evidence in

addition to the videos which was indicative of importation of methamphetamine.

*See* PSR [51] at 11 (filed under seal) (discussing Godsey's travel to within 25 miles

of the border and the drugs' high purity).    And the record reflects that counsel's

decision not to object to the videos was reasonable and did not constitute deficient performance in light of all of the evidence.   *See Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir. 2011) (citing *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003)); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").   This claim is simply without merit.

Finally, even if there were some arguable claim of deficient performance at sentencing, Godsey must show that his counsel's ineffectiveness was prejudicial, meaning that it is reasonably likely the result of the proceeding would have been different.   *See Harrington*, 562 U.S. at 111; *Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.   But after evaluating the relevant sentencing factors found at 18 U.S.C. § 3553, the Court stated at sentencing that in the event it

> erred in calculating any of the sentencing guidelines in this case or in resolving any objections, the Court would've imposed the same sentence as a variance or non-guideline sentence based upon the offense conduct in this case, the characteristics of the defendant, and the other 3553 factors as the Court has discussed them here today.

Tr. [68] at 24; *see also id.* at 17-19, 24 (discussing § 3553 factors).   Because Godsey's sentence would have been the same even if the 40 ounces were excluded and the importation enhancement not applied, he cannot show prejudice with respect to any ineffective assistance claims related to his sentencing.   *See id.* at 17-19, 24; *Harrington*, 562 U.S. at 111; *Strickland,* 466 U.S. at 687-88; *Tucker*, 115 F.3d at 280.

III.   <u>CONCLUSION</u>

Because the Motion [70], files, and records of the case conclusively show that he is entitled to no relief, the Court finds that Defendant Nicholas Paul Godsey's Motion [70] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Nicholas Paul Godsey's Motion [70] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 14th day of February, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE